TOWN OF STRATFORD *v.* A. SECONDINO
AND SON, INC.
(AC 32589)

Lavine, Bear and Mihalakos, Js.

Argued October 25, 2011—officially released February 28, 2012

*Bryan L. LeClerc*, with whom was *Ryan P. Driscoll*, for the appellant-appellee (plaintiff).

*Glenn A. Duhl*, with whom, on the brief, was *Jasmin M. Rojas*, for the appellee-appellant (defendant).

*Opinion*

MIHALAKOS, J. This appeal arises from a contract dispute between the plaintiff, the town of Stratford, and the defendant, A. Secondino & Son, Inc., after a trial to the court in which the court found in favor of the defendant on the complaint and on the first and second counts of the defendant's counterclaim. On appeal, the plaintiff claims that the trial court erred by ruling that the defendant was not required to comply with a condition precedent to payment as set forth in the parties' contract. The defendant filed a cross appeal, claiming

that the court's failure to award statutory interest pursuant to General Statutes § 37-3a was inconsistent with its finding that the plaintiff's detention of the defendant's money was wrongful. We disagree with the claims raised by both parties and, accordingly, affirm the judgment of the trial court.

The following facts, which the trial court reasonably found, are relevant to our resolution of the claims on appeal. In its memorandum of decision, the court found that the parties had entered into a contract "for the construction of a new fire headquarters building in Stratford. . . . The final contract between the [plaintiff] and the defendant consisted of: (1) a [document titled 'Standard Form of Agreement between Owner and Contractor'] on [the American Institute of Architects'] document A101-1997; (2) [a document titled 'General Conditions of the Contract for Construction'] on [the American Institute of Architects'] form A-201; and . . . (3) plans and specifications prepared by the architects. . . . The contract originally provided for a contract price of $4,837,000 and for completion of construction within 400 calendar days. As the result of approved change orders, the final price was increased to $5,561,120.08. Under the provisions of the contract, the [plaintiff] was the 'Owner,' the defendant was the '[C]ontractor' and Antinozzi Associates, P.C., was the 'Architect.' Leonard Bucher was designated as the 'Owner's representative,' and David Secondino was designated as the 'Contractor's representative. . . .' [The architect,] Paul Lisi, acted on behalf of Antinozzi Associates, P.C. . . .

"Under the provisions of article 5 of the contract, the defendant was required to make monthly applications for payment as work on the project progressed. Paragraph 5.1.3 states: 'Provided that an Application for Payment is received by the Architect not later than the *first* day of a month, the Owner shall make payment

to the Contractor not later than the *15th* day of the *following* month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than *30* days after the Architect *approves* the Application for Payment *in the amount so approved.*' . . .

"Although not contemplated by the terms of the contract, the parties handled monthly applications for payment in the following manner. The defendant would prepare a 'pencil copy' of each monthly application for payment and forward it to Lisi. After discussions between David Secondino and Lisi, the defendant would prepare five copies of a final application for payment, each of which would be signed on behalf of the defendant, notarized and delivered to Lisi. Lisi would sign each copy of the application, retain one copy for his files and forward the remaining copies to Bucher so that payments could be made to the defendant.

"The defendant was aware that Bucher was independently reviewing and approving each application for payment prior to authorizing payment. However, despite the provisions of the contract, the defendant was unaware that Lisi was approving and signing the final applications for payment before forwarding them to Bucher. The defendant believed that after orally approving the 'pencil copy' of each application, Lisi did not take any further action to evidence his approval of the final application. This mistaken belief was engendered, to some extent, by the [plaintiff], which retained all copies of the applications for payment forwarded to Bucher by Lisi rather than furnishing the defendant with copies of each fully approved application for payments. . . .

"After substantial completion of the project as originally contemplated, there remained certain 'punch list' items which needed to be addressed. These items were

listed on a list prepared by Lisi and sent to the defendant on August 22, 2005 . . . . On February 22, 2006 . . . Lisi prepared a revised punch list, which also included items related to the dispatch center construction. A final punch list was prepared by Lisi on June 9, 2006, and sent to Bucher. . . . Lisi prepared an estimate of the cost of completion of the punch list on June 5, 2006—$60,950. In accordance with the provisions of paragraph 5.2.2 of the contract, Lisi proposed to withhold twice that amount from the payment due the defendant.

"On June 29, 2006, Lisi sent a letter to Bucher reminding him that certain items on the punch list had not yet been addressed and that the one year warranty period on the project would expire on August 23, 2006.[1]

"On July 19, 2006, the defendant sent a letter to Bucher, with a copy to Lisi, addressing, at length, the items on Lisi's June 9, 2006 punch list. In the letter, the defendant claimed that only $3675 worth of punch work remained to be done and proposed reducing the retainage to twice that amount ($7350) in accordance with paragraph 5.2.2 of the agreement. In that same letter, the defendant offered to promptly complete the punch work when the amount being withheld from the defendant (claimed to be $137,659) was reduced to $7350. The letter threatened litigation '[i]f these issues are not resolved and our payment is not received by August 15, 2006 . . . .'

"On August 4, 2006, the defendant again wrote to Bucher, informing him that [it] had not heard from Lisi

_____

[1] The court stated in its memorandum of decision: "Paragraph 9.8.4 of the 'General Conditions [of the Contract for Construction'] requires the architect to prepare a certificate establishing the date of substantial completion. The paragraph further provides that the date of substantial completion shall be the date from which warranties run. Although the certificate of substantial completion was not introduced into evidence, it is reasonable to infer from Lisi's June 29, 2006 letter that the date of substantial completion was August 23, 2005."

concerning [its] request that the retainage be reduced. In the letter, the defendant characterized the amount of work remaining to be done as 'minuscule' but refused to return to the job until the [plaintiff] reduced the retainage. The letter also claimed that the [plaintiff] had hired an attorney to seek to attach the defendant's surety bond and informed Bucher that the surety company intended to deny the claim. On August 22, 2006 the [plaintiff] commenced this litigation against the defendant, claiming breach of contract because of the defendant's failure to correct unspecified portions of its work, which did not conform to contract specifications. . . .

"After the suit was filed, the [plaintiff] and the defendant and their respective attorneys met on several occasions in attempts to resolve their differences. Lisi did not participate in these meetings. David Secondino, vice president of the defendant, testified that he was told by [the plaintiff's] officials, including the [plaintiff's] attorney that all outstanding issues would be handled directly between the parties without regard to any participation by Lisi. This claim was essentially verified by Lisi who testified that he was not involved with the project for approximately two years, beginning shortly after he prepared his June 9, 2006 punch list . . . and lasting until 2008, when Lisi was asked to participate in the preparation of [a] new punch list following a 'commissioning' of the [heating, ventilating and air conditioning] system ordered by the [plaintiff]. During that two year period, Lisi did not visit the site and was unaware of the state of the project or the discussions between the parties.

"During the September, 2006 meetings, the defendant was assured by a representative of the [plaintiff] that if the punch list items were addressed, the defendant would be paid the balance due under contract. Thereafter, the defendant and its subcontractors returned to

the job and completed, to the [plaintiff's] satisfaction, nearly all of the items listed on the punch list. On April 17, 2007, Bucher, acting on behalf of the [plaintiff], had certified on a copy of Lisi's punch list that the vast majority of the punch list had been addressed to the [plaintiff's] satisfaction. . . . Despite this certification, the [plaintiff] did not reduce the retainage by making further payments to the defendant." (Citations omitted; emphasis in original.) The plaintiff proceeded with the litigation against the defendant.

"In its revised complaint, dated November 12, 2007, the [plaintiff] claim[ed] that the defendant breached its obligations under the contract by failing 'to correct and remedy portions of the PROJECT which were not in conformance with the AGREEMENT, in breach of its expressed warranty and AGREEMENT with the [p]laintiff . . . .'

"In its counterclaim against the [plaintiff], the defendant claim[ed] that . . . the [plaintiff] breached the contract by failing to make payments to [the] defendant in accordance with its obligations under the contract [and that] . . . the [plaintiff] wrongfully detained money due to the defendant . . . ."

The court rendered judgment in favor of the defendant on the plaintiff's complaint, finding that the defendant did not breach its obligations under the contract. The court also awarded the defendant $136,510.20 in damages plus $40,122.31 in interest, finding that the plaintiff had breached the contract by failing to make payments to the defendant and by detaining money due to the defendant. The defendant thereafter filed a motion for correction and/or alteration of the memorandum of decision, requesting, in part, that the court award it wrongful detention of money interest pursuant to § 37-3a. The court issued a correction, reducing the interest award to $39,000.64, and noting that the defen-

dant had been awarded contractual interest, exercised its discretion by denying the defendant's motion to the extent it sought duplicative interest awards. The present appeal by the plaintiff, and cross appeal by the defendant, followed.

On appeal, the plaintiff claims that the court improperly determined that the defendant was not required to comply with a condition precedent to payment required under the contract; in its cross appeal, the defendant claims that the court erred by not awarding it statutory interest pursuant to § 37-3a.

I

PLAINTIFF'S APPEAL

We first address the plaintiff's claim that the court erred by ruling that the defendant was not required to comply with the condition precedent to payment set forth in the contract. The plaintiff specifically claims that the defendant failed to obtain approval of applications for payment from Lisi. The court, however, ruled that the defendant was not required to comply with that condition precedent because the plaintiff had waived that condition "when, in the late summer of 2006 after commencing litigation, it began dealing with the defendant directly and ceased to utilize the services of Lisi as contract administrator." On the basis of that determination, the court found in favor of the defendant on the first and second counts of its counterclaim and against the plaintiff on its claim that the defendant was required to comply with the condition precedent.

The plaintiff argues that the court's finding that it waived the condition precedent to payment provision was improper because the defendant did not specially plead waiver, and that, in any event, the court's finding was not supported by the evidence adduced at trial, and, thus, was clearly erroneous. We are not persuaded.

Although we agree with the plaintiff that waiver should be specially pleaded, "[w]here, however, facts are sufficiently set up in a pleading to warrant the inference of waiver, it will be considered though it is not expressly alleged . . . ." (Internal quotation marks omitted.) *Jenkins* v. *Indemnity Ins. Co.*, 152 Conn. 249, 256, 205 A.2d 780 (1964). In this instance, the defendant's second amended answer and counterclaim contained factual allegations consistent with a claim of waiver—namely, that the defendant continued to work on the project despite completing its contractual obligations and not receiving payment. Furthermore, the defendant indicated to the court at the start of trial that the parties negated, through "the course of conduct," the language in the contract requiring Lisi's certificate of payment.[2] The plaintiff failed to object at that time,

---

[2] The following colloquy occurred during trial:

"The Court:—[W]hat you're saying is that—that within the four corners of the contract, I can read in there language that will, in effect, negate the language requiring the architect's certificate of payment?

"[The Defendant's Counsel]: *At least by the course of conduct*, I believe that—I don't believe that the general contractor need sue the architect for the architect's failure to approve the payment. I believe that there are communications from the general contractor to the architect and the [plaintiff] saying, we've done that which you asked us to do. Please pay. And we got—

"The Court: I mean, you think that satisfies all the requirement of—dispute what plaintiff's counsel maintains, you believe that that is—what—whatever the evidence will show happened will be sufficient to satisfy that provision in the contract.

"[The Defendant's Counsel]: I—I have, believe, that common sense would prevail and that practical conduct—

"The Court: I can only enforce the contract you made, not the contract you should have made.

"[The Defendant's Counsel]: But it's—it's *the course of dealing* between the parties that can't be ignored.

"The Court: All right. And before litigation, the parties were—this contract was some two or three years between formation and litigation?

"[The Defendant's Counsel]: Yes, and then—as Your Honor can take judicial notice, not all [American Institute of Architects'] contracts are strictly adhered to in the course of a construction.

"The Court: No, again, that—we'll we can deal with that, and if you're— *if you're claiming a waiver*, we'll—we'll, you know, make note of it as we go along.

"[The Defendant's Counsel]: Okay." (Emphasis added.)

and later, made no objection when the defendant presented evidence that the plaintiff had sought to forgo Lisi's services in the role set forth for him under the contract. Nor did the plaintiff object to the defendant's treatment of waiver throughout trial in its posttrial brief. "[T]he proper way to attack a variance between pleadings and proof is by objection at the trial to the admissibility of that evidence which varies from the pleadings, and failure to do so at the trial constitutes a waiver of any objection to such variance." (Internal quotation marks omitted.) *Tedesco* v. *Stamford*, 215 Conn. 450, 461, 576 A.2d 1273 (1990). Because the plaintiff did not object to waiver evidence on the ground that waiver had not been pleaded specifically, any insufficiency in the pleading was waived by the plaintiff at trial. See *Banks Building Co., LLC* v. *Malanga Family Real Estate Holding, LLC*, 102 Conn. App. 231, 236 n.8, 926 A.2d 1 (2007).

We next consider whether the court properly found that the plaintiff had waived the condition precedent of the contract requiring the defendant to submit applications for payment to Lisi. Although "[w]aiver involves an intentional relinquishment of a known right . . . [it] does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Citation omitted; internal quotation marks omitted.) Id., 239. Furthermore, whether a waiver has occurred is a factual question for the trier. See *Ridgefield* v. *Eppoliti Realty Co.*, 71 Conn. App. 321, 340, 801 A.2d 902, cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002). "Our review of the trial court's determination [therefore] is guided by the principle that, because waiver [is a question] of fact . . . we will not disturb the trial court's [finding] unless [it is] clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Naftzger* v. *Naftzger & Kuhe*,

*Inc.*, 26 Conn. App. 521, 526, 602 A.2d 606 (1992). Thus, the inquiry in the present case is whether there was evidence from which the court reasonably could have found acts and conduct of the plaintiff consistent with waiver of the condition precedent of the contract requiring the defendant to submit applications for payment to Lisi. See *Hendsey* v. *Southern New England Telephone Co.*, 128 Conn. 132, 135–36, 20 A.2d 722 (1941).

"A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. . . . If the condition is not fulfilled, the right to enforce the contract does not come into existence. . . . Whether a provision in a contract is a condition the nonfulfilment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract." (Citations omitted.) *Lach* v. *Cahill*, 138 Conn. 418, 421, 85 A.2d 481 (1951); see also *F & W Welding Service, Inc.* v. *ADL Contracting Corp.*, 217 Conn. 507, 517, 587 A.2d 92 (1991); *Christophersen* v. *Blount*, 216 Conn. 509, 512, 582 A.2d 460 (1990); *Maloney* v. *PCRE, LLC*, 68 Conn. App. 727, 735, 793 A.2d 1118 (2002).

We agree with the plaintiff that a finding a waiver, without any evidence to support it, is clearly erroneous. We disagree, however, with the plaintiff's assertion that there was no evidence in the present case to support the findings of fact that led to the court's conclusion that the plaintiff implicitly waived the condition precedent of the contract that required the defendant to submit applications for payment to Lisi. On the contrary, we conclude that the record supports the findings of

the court on which it based its conclusion that the plaintiff had implicitly waived that condition.

Although the parties initially complied with the provisions of the contract that required the defendant to submit applications for payment to Lisi, the parties had departed from this arrangement by April 28, 2006, when the defendant submitted its "application for payment, number 28," to Lisi. Subparagraph 9.4.1 of the "General Conditions of the Contract for Construction" provides that, within seven days of receipt of that application for payment, Lisi had to either issue a certification for payment or notify the plaintiff and the defendant in writing of his reasons for withholding payment. The court reasonably found that Lisi never did either, and as a result, "there was no way that the defendant could process an application for final payment as contemplated by the provisions of the contract."

As the court noted, the plaintiff, thereafter, never indicated that it still expected the defendant to continue to submit applications for payment to Lisi, nor did the plaintiff at any point state that it was withholding payment on the basis of the defendant's failure to comply with the requirements of the contract. The record supports the determination that the plaintiff's acts had relieved Lisi of his administrative duties under the contract by September, 2006, when the plaintiff, through its attorney, promised the defendant that moneys would be released to the defendant as items on the punch list were completed. Lisi, the court reasonably found, was no longer part of that payment arrangement. The court credited testimony that Lisi had no further contact with Bucher regarding the outstanding items on the June 9, 2006 punch list after the September meetings. Moreover, when the plaintiff finally completed the punch list work, a copy of the punch list attesting to the completion of the outstanding items dated April 17, 2007, was signed by Bucher but not Lisi—indeed, Lisi testified

that he did not even see a copy of that completed punch list until his deposition in October, 2009. Lisi's inaction with regard to application for payment number 28, and, thereafter, his noninvolvement with the administration of remaining items on the June 9, 2006 punch list, support the court's findings that the plaintiff had waived the condition precedent of the contract requiring the defendant to submit payment applications directly to Lisi.

## II

## DEFENDANT'S CROSS APPEAL

We next address the defendant's claim on its cross appeal that the court erred by not awarding it prejudgment interest pursuant to § 37-3a.[3]

"We begin our analysis with the appropriate standard of review with respect to the award of compensatory interest. The allowance of prejudgment interest as an element of damages is an equitable determination and a matter lying within the discretion of the trial court. . . . Before awarding interest, the trial court must ascertain whether the defendant has wrongfully detained money damages due the plaintiff. . . . Interest on such damages ordinarily begins to run from the time it is due and payable to the plaintiff. . . . The determination of whether or not interest is to be recognized as a proper element of damage, is one to be made in view of the demands of justice rather than through the application of an arbitrary rule. . . . *West Haven Sound Development Corp.* v. *West Haven,* 207 Conn. 308, 321, 541 A.2d 858 (1988).

"A trial court must make two determinations when awarding compensatory interest under § 37-3a: (1)

---

[3] General Statutes § 37-3a provides in relevant part: "(a) Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ."

whether the party against whom interest is sought has wrongfully detained money due the other party; and (2) the date upon which the wrongful detention began in order to determine the time from which interest should be calculated. *Metcalfe* v. *Talarski*, 213 Conn. 145, 160, 567 A.2d 1148 (1989); *West Haven Sound Development Corp.* v. *West Haven*, supra, 207 Conn. 321." (Internal quotation marks omitted.) *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 734–35, 687 A.2d 506 (1997).

The defendant claims that the court abused its discretion in not awarding prejudgment interest under § 37-3a because the record adequately demonstrates that the plaintiff's detention of moneys was "wrongful." The defendant points to a number of instances in which it claims that the plaintiff's reasons for withholding payment were based on excuse and pretense, rather than legitimate concern about the defendant's performance under the contract. To that end, the defendant notes the court's findings that the plaintiff had "no justifiable basis . . . to retain any of the funds due [to] the defendant," that the plaintiff "used changing and sometimes contradicting reasons for withholding payments due [to] the defendant," and, at times, even offered "fabrications . . . to excuse [its] failure to pay . . . the balance due under the contract." The defendant argues that the court's acknowledgment of the plaintiff's wrongful conduct warrants its recovery of prejudgment interest under § 37-3a.

Although the determination as to whether prejudgment interest under § 37-3a should be awarded may depend on whether the detention of money is wrongful, "[t]he allowance of interest as an element of damages is . . . *primarily an equitable determination and a matter lying within the discretion of the trial court.*" (Emphasis added; internal quotation marks omitted.) *Ferrato* v. *Webster Bank*, 67 Conn. App. 588, 596, 789

A.2d 472, cert. denied, 259 Conn. 930, 793 A.2d 1084 (2002). In *State* v. *Corchado*, 200 Conn. 453, 512 A.2d 183 (1986), our Supreme Court stated that: "[d]iscretion . . . imports something more than leeway in decision-making. *State* v. *Onofrio*, 179 Conn. 23, 29, 425 A.2d 560 (1980). It denotes the absence of a hard and fast rule or a mandatory procedure regardless of varying circumstances. *State* v. *Wallach*, 353 Mo. 312, 323, 182 S.W.2d 313 (1944). It means a legal [discretion, to] be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. *Buckley* v. *Warden*, 181 Conn. 286, 290, 435 A.2d 348 (1980), quoting *Hammerberg* v. *Leinert*, 132 Conn. 596, [604–605], 46 A.2d 420 (1946); see *State* v. *Battle*, 170 Conn. 469, 476, 365 A.2d 1100 (1976)." (Internal quotation marks omitted.) *State* v. *Corchado*, supra, 464.

Although the court did not specifically find that the plaintiff's detention of payment was wrongful, the court's discretionary authority meant that even if it was wrongful, an award of prejudgment interest under § 37-3a was not necessarily mandated. Although our law recognizes prejudgment interest as a component of damages, it does not follow that it must be awarded. See *Sosin* v. *Sosin*, 300 Conn. 205, 210, 14 A.3d 307 (2011) (concluding "that the trial court had the discretion to award interest pursuant to § 37-3a"). It is, rather, an "equitable determination"; see, e.g., *West Haven Sound Development Corp.* v. *West Haven*, supra, 207 Conn. 321; *Cecio Bros., Inc.* v. *Feldmann*, 161 Conn. 265, 275, 287 A.2d 374 (1971); which is informed by "the demands of justice rather than through the application of an arbitrary rule." (Internal quotation marks omitted.) *Bertozzi* v. *McCarthy*, 164 Conn. 463, 466, 323 A.2d 553 (1973); see also *Board of County Commissioners* v. *United States*, 308 U.S. 343, 352, 60 S. Ct. 285, 84 L. Ed. 313 (1939) ("[I]nterest is not recovered according to a

rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable."). In the present matter, the court awarded the defendant contractual interest at a rate of 10 percent and concluded that an additional award of prejudgment interest under § 37-3a would have constituted duplicative interest under the circumstances of this case. We agree with the court and conclude that the defendant has failed to demonstrate that the court abused its discretion in declining to award it additional prejudgment interest under § 37-3a.

The judgment is affirmed.

In this opinion the other judges concurred.