******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LISA BRUNO *v.* REED WHIPPLE ET AL.
(AC 35707)

Sheldon, Keller and Harper, Js.

*Argued September 16—officially released December 29, 2015*

(Appeal from Superior Court, judicial district of Danbury, Maronich, J. [summary judgment]; Doherty, J. [judgment; motion for permission to file amended answer, special defense; motion to set aside verdict; articulation].)

*Lisa Bruno*, self-represented, the appellant (plaintiff).

*Laura Pascale Zaino*, with whom, on the brief, was *Stephen P. Fogerty*, for the appellees (defendants).

*Opinion*

SHELDON, J. This case arises from dealings between the parties concerning the construction by the defendant Heritage Homes Construction Company, LLC (Heritage Homes), of a new home in Ridgefield for the plaintiff, Lisa Bruno, and her former husband, Stephen Bruno (Bruno). The plaintiff appeals from the judgment of the trial court in favor of the defendants, Heritage Homes and its president, Reed Whipple, claiming that the trial court erred: (1) in denying her posttrial motion to set aside the jury's verdict (a) for Heritage Homes on her claim of breach of contract, and (b) for Whipple on her claim of violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.; and (2) in granting the pretrial motion of Heritage Homes for summary judgment on her claims of breach of the implied covenant of good faith and fair dealing and violation of CUTPA. We reverse the judgment in favor of Heritage Homes on the plaintiff's claim of breach of contract and remand the case for a hearing in damages on that claim pursuant to the unchallenged portion of the jury's verdict and accompanying answers to interrogatories concerning that claim. We affirm the judgment in all other respects.

In a previous appeal in this matter, *Bruno* v. *Whipple*, 138 Conn. App. 496, 498–503, 54 A.3d 184 (2012), this court set forth the following relevant factual and procedural history. "On January 27, 2010, the plaintiff filed a six count amended second revised complaint against the defendants. In the complaint, the plaintiff alleged that the defendants, as parties to a contract with herself and Bruno to build the new home, had breached the contract and the implied covenant of good faith and fair dealing arising thereunder by conspiring with Bruno to launder his money through the project, and thus to deprive her of fair, just and reasonable alimony and division of assets in connection with the impending dissolution of her marriage. On that score, the plaintiff alleged, more particularly, that by December, 2005, when Bruno initiated marital dissolution proceedings against her, construction of the new home was nearly complete for what by then was the total sum of approximately $1,800,000. Thereafter, however, from December, 2005, to January, 2006, and from May, 2006, to July, 2006, Bruno paid the defendants additional sums totaling approximately $2,600,000, all purportedly for expenditures on the project that she did not authorize. On that basis, the plaintiff alleged that the defendants had colluded with Bruno to launder his money through the project, either by not performing all of the construction work they claimed to have performed on the project or by submitting multiple billings for the work they did perform. The plaintiff claimed . . . that by engaging in such collusive conduct with Bruno, [the defendants] not only breached the contract, as alleged in count[s]

one [and two] of the complaint,[1] and the implied covenant of good faith and fair dealing arising under the contract, as alleged in count[s] three [and four], but [they] also committed unfair or deceptive acts or practices in the conduct of a trade or commerce that caused her to suffer ascertainable economic losses in violation of CUTPA, as alleged in count[s] five [and six].

"On March 25, 2011, the plaintiff and, on March 28, 2011, the defendants filed motions for summary judgment. In support of their motion, the defendants argued, inter alia, that Whipple was entitled to judgment as a matter of law on each of the plaintiff's claims against him because all such claims were based materially upon alleged breaches of duties arising under a contract to which he was not a party. On that score, they argued that Whipple was not identified in the contract as a party and that, although he signed the contract in his representative capacity as a member of Heritage Homes, he did not sign it in his individual capacity. In support of that argument, the defendants submitted Whipple's personal affidavit in which he averred that he had never individually entered into any contract with the plaintiff or Bruno, nor had he ever individually performed any work or provided any labor, services or material for either of them on his own behalf. In addition, with respect to the plaintiff's core allegation of wrongdoing against him in each of her claims—that he had engaged in money laundering on behalf of Bruno by returning money to him for work billed on the home construction project—Whipple averred that all work billed by Heritage Homes on the project was performed and fully paid for by Bruno pursuant to the contract, and that neither he nor Heritage Homes ever had returned any money to Bruno or laundered money for him through the project, as the plaintiff had alleged. The defendants supported their summary judgment motion with a memorandum of law and several exhibits, including Whipple's affidavit and an unauthenticated copy of the subject contract.

"In opposition to the defendants' motion, the plaintiff filed, inter alia, a memorandum of law and several exhibits, including a copy of the contract that was textually identical to that submitted by the defendants and two personal affidavits. . . . As grounds for opposing the defendants' motion, the plaintiff argued, inter alia, that (1) the defendants had failed to support their motion by properly authenticated documents and materials; (2) Whipple was indeed a party to the contract in his individual capacity; (3) even if Whipple signed the contract only in his representative capacity, he nonetheless should be held liable for Heritage Homes' tortious conduct, either as a direct participant in such conduct or as a person who so completely and pervasively controlled the company as to warrant piercing the corporate veil; and (4) the defendants' documented interference with her ability to keep informed of and

participate in the construction project's planning and oversight after Bruno commenced marital dissolution proceedings against her, by dealing solely and exclusively with Bruno as to costly project modifications without her knowledge or consent, supports the inference that the defendants conspired with Bruno to launder his marital assets through Heritage Homes' accounts, for Bruno's benefit and to her own great financial loss.

"After hearing oral argument on the parties' motions for summary judgment, the court issued a memorandum of decision in which it granted the defendants' motion as to all three of the plaintiff's claims against Whipple. As to the plaintiff's threshold claim of breach of contract, under count one of her complaint, the court relied upon the language of the contract, as submitted to it by both parties, to conclude that Whipple could not be found liable because 'there is no genuine issue of [material] fact that Whipple was not a party to the contract as pleaded by the plaintiff.' As to the plaintiff's claims of breach of the implied covenant of good faith and fair dealing and . . . violation of CUTPA, under counts three and five of her complaint, the court determined that both of those claims were also 'directly dependent upon the existence of the contractual relationship' between the plaintiff and Whipple, and thus that Whipple could not be held liable on either such claim due to his status as a nonparty to the contract. The court's determination to this effect on the plaintiff's claim of breach of the implied covenant of good faith and fair dealing was based upon both settled case law, holding that such a claim can only be asserted against a contracting party, and its conclusion that the allegations of the third count failed to state any independent basis for establishing his liability in tort. By contrast, the court's determination that the plaintiff's CUTPA claim against Whipple was directly dependent upon the existence of a contractual relationship was based simply upon its observation that all of the allegations of her breach of contract claim against him were realleged in support of the CUTPA claim.

"Following the issuance of the court's decision, the defendants asked that the decision be clarified as to whether it also was intended to apply to the plaintiff's claims against Heritage Homes, which had joined with [Whipple] in moving for summary judgment. In response to that request, the court promptly issued a corrected memorandum of decision in which it (1) restated nearly verbatim, in the first section of the corrected decision bearing only Whipple's name and a specific reference to the three numbered counts against him (one, three and five), its prior decision granting the defendants' motion as to each such count; and then (2) proceeded, in the second section bearing only the name of Heritage Homes and a specific reference to the three numbered counts against it (two, four and

six), to deny the defendants' motion with respect to count two, alleging breach of contract, but to grant the motion as to counts four and six, alleging breach of the implied covenant of good faith and fair dealing and . . . violation of CUTPA. With respect to counts four and six, in particular, the court concluded its analysis as follows: 'While the plaintiff has alleged conduct that would support a finding of aggravating circumstances sufficient for a CUTPA claim or a claim for breach of covenants of good faith and fair dealing, that the defendants have engaged in a scheme to launder money through . . . Bruno through the construction contract, those allegations are conclusory and supported by no facts. The defendants have challenged those assertions in their motion for summary judgment together with supporting affidavits and documents. If the plaintiff has no evidence and her supporting documents are inadequate, the court is justified in granting summary judgment provided the defendants have met their burden of proof. . . . The plaintiff must demonstrate that a genuine issue of material fact exists through 'counter affidavits and concrete evidence.' . . . The court finds that the plaintiff has failed to meet that burden. . . . Following the court's later denials of the plaintiff's separate motions for reargument with respect to the court's summary judgment as to Whipple and Heritage Homes, the plaintiff filed this appeal." (Footnotes altered.) Id.

This court dismissed the plaintiff's appeal from the summary judgment rendered for Heritage Homes for lack of a final judgment due to the continuing pendency in the trial court of the plaintiff's claim of breach of contract against it. Id., 498 n.1. Thereafter, this court affirmed the summary judgment rendered for Whipple on the plaintiff's claims of breach of contract and breach of the implied covenant of good faith and fair dealing against him, but found error in the trial court's rendering of summary judgment for Whipple on the plaintiff's CUTPA claim against him. Id., 503. Accordingly, on remand, the remaining two counts of the plaintiff's complaint—her breach of contract claim against Heritage Homes and her CUTPA claim against Whipple—were tried to a jury.

The presentation of evidence to the jury commenced on February 27, 2013. Five days later, after both sides had rested, the defendants filed written requests to charge dated March 4, 2013, that included a proposed instruction on the special defense of waiver to the plaintiff's claim of breach of contract. The theory of waiver set forth in the proposed instruction was that both the plaintiff and Bruno had made oral requests for changes to the construction contract without signed work orders and that neither had requested billings every two weeks, as required by the parties' contract. The plaintiff objected to the defendants' proposed charge on waiver, arguing that waiver had not been pleaded as a special defense, and thus that she had had no notice of that

claim. In response, the defendants argued that they had mentioned waiver in their opening statement to the jury and had introduced evidence of waiver throughout the trial.[2] The defendants further argued that because the plaintiff had not objected to their evidence of waiver, she had waived her right to object to an instruction on waiver as a special defense.

The court determined that sufficient evidence of waiver had been presented at trial to apprise the plaintiff of that claim. It therefore granted the defendants permission to amend their answer by pleading waiver as a special defense[3] and agreed to instruct the jury on that special defense. Consistent with those rulings, the court instructed the jury on waiver with directions to have the jury separately answer jury interrogatories asking whether it "f[ou]nd in favor of Lisa Bruno" on her claim of breach of contract against Heritage Homes" and, if so, whether "the plaintiff, Lisa Bruno, waived the breach of contract by the defendant Heritage Homes . . . ."

On March 8, 2013, the jury returned a verdict in favor of Whipple on the plaintiff's CUTPA claim against him. It also returned a verdict in favor of Heritage Homes on the plaintiff's breach of contract claim against it, expressly basing the latter verdict on its answers to jury interrogatories that (1) Heritage Homes had breached its contract with the plaintiff, but (2) the plaintiff had waived that breach.

On March 18, 2013, the plaintiff filed a motion to set aside the verdict, claiming that the trial court erred by instructing the jury on Heritage Homes' special defense of waiver because the defendants had neither pleaded waiver as a special defense nor alleged facts supportive of that special defense in any of its other pleadings. She argued that the trial court's ruling permitting Heritage Homes to assert that special defense, without any notice to her before the close of evidence, violated her right not to be deprived of her property without due process of law. She also argued that the jury's verdict in favor of Whipple on her CUTPA claim against him should be set aside because it was contrary to law and to the evidence presented at trial, particularly Whipple's admission in his testimony that, at Bruno's request, he had refused to give the plaintiff any information concerning the construction project after Bruno's initiation of divorce proceedings against her. The trial court summarily denied the plaintiff's motion. On July 7, 2014, after this appeal was filed, the trial court filed an articulation as to its rationale for denying the motion to set aside the verdict on the CUTPA claim, stating simply that "[t]here was no reason not to accept the verdict of the jury." Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court erred in deny-

ing her motion to set aside the jury verdict (1) for Heritage Homes on her claim of breach of contract, and (2) for Whipple on her claim of violation of CUTPA. "The standard of review governing our review of a trial court's denial of a motion to set aside the verdict is well settled. The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach [its] conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) *Beeman* v. *Stratford*, 157 Conn. App. 528, 542, 116 A.3d 855 (2015). With this standard in mind, we address the plaintiff's first two claims of error.

A

The plaintiff first claims that the trial court erred in denying her motion to set aside the jury's verdict for Heritage Homes on her breach of contract claim. Specifically, she challenges the court's ruling permitting Heritage Homes to claim that she had waived her contractual rights, allowing Heritage Homes to plead the special defense of waiver after the close of evidence at trial, then instructing the jury on that special defense. In response, Heritage Homes argues, as it did before the trial court, that the plaintiff waived her right not to have the court adjudicate that special defense by allowing that claim to be fully litigated at trial without any objection by her. The plaintiff disputes this argument, insisting that she objected to the belated claim of waiver as soon as Heritage Homes made it clear that it wished to assert it. We agree with the plaintiff.

The following additional procedural history is relevant to this claim. Upon the filing of Heritage Homes' request to charge seeking a jury instruction on waiver, the court heard extensive argument by the parties. The plaintiff argued that she had not been given notice of the claim of waiver until she received the request to charge. Heritage Homes argued that because it had mentioned waiver in its opening statement to the jury and had introduced evidence of waiver throughout the trial without any objection by the plaintiff, the defense of waiver had been fully litigated and, thus, pursuant to *Stratford* v. *A. Secondino & Son, Inc.*, 133 Conn. App. 737, 38 A.3d 179, cert. denied, 304 Conn. 918, 41 A.3d 305 (2012), was properly before the court.[4]

The trial court overruled the plaintiff's objection to the request to charge on waiver as follows: "[M]y recollection of the evidence and testimony is that there

were—there was evidence concerning the special defense of waiver, and it was in through witnesses that were asked those questions." Heritage Homes offered to "take on the burden [of proving] waiver as a special defense."[5] The trial court agreed to allow the issue of waiver in as a special defense so that Heritage Homes would bear the burden of proving it and the plaintiff would have no burden of disproving it. The court later expounded upon its ruling as follows: "I'm going to find in this case, similarly as in *Stratford* v. *A. Secondino & Son, Inc.*, [supra, 133 Conn. App. 737], the defendant indicated to the court at the start of trial that the [plaintiff] negated through a course of conduct the language in the contract, which required that the contractor shall bill the owner every two weeks a sum equal to the total of all labor, work, and materials plus 15 percent of that total for that previous two week period, and that the defendants. . . . That all modification and additions to the contract shall be in writing and signed by the plaintiff with the amounts agreed to price—with the amount of the agreed price. So, that the court's going to find in this case there was sufficient evidence or testimony at the time of the trial to apprise . . . the plaintiff . . . of that affirmative or special defense.

"So, the court's going to allow it, and the court's going to charge the jury . . . that the special defense has been alleged by the defendant and it has to be proven by the defendant by a fair preponderance of the evidence, and the plaintiff has no burden to disprove it." The court thus permitted Heritage Homes to amend its answer by pleading waiver as a special defense to the plaintiff's breach of contract claim[6] and instructed the jury on that special defense.[7] The plaintiff claims that the trial court erred in so ruling.

"Pleadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them." (Internal quotation marks omitted.) *McKenna* v. *Delente*, 123 Conn. App. 146, 156–57, 2 A.3d 38 (2010). Whether to grant an untimely amendment to the pleadings is within the discretion of the trial court. *McLaughlin Ford, Inc.* v. *Ford Motor Co.*, 192 Conn. 558, 564, 473 A.2d 1185 (1984).

As for special defenses, our Supreme Court has stated that "[t]he fundamental purpose of a special defense, like other pleadings, is to apprise the court and opposing counsel of the issues to be tried, so that basic issues are not concealed until the trial is underway." (Internal quotation marks omitted.) *Almada* v. *Wausau Business Ins. Co.*, 274 Conn. 449, 456, 876 A.2d 535 (2005). Practice Book § 10-50 provides in relevant part: "No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of

fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. . . ." Thus, "[i]f a party seeks to introduce evidence under a denial which is consistent with a prima facie case, but nevertheless would tend to destroy the cause of action, the new matter must be affirmatively pleaded as a special defense." (Internal quotation marks omitted.) *Mitchell* v. *Guardian Systems, Inc.*, 72 Conn. App. 158, 166–67, 804 A.2d 1004, cert. denied, 262 Conn. 903, 810 A.2d 269 (2002). "A defendant's failure to plead a special defense precludes the admission of evidence on the subject. . . . It would be fundamentally unfair to allow any defendant to await the time of trial to introduce an unpleaded defense. Such conduct would result in trial by ambuscade to the detriment of the opposing party." (Internal quotation marks omitted.) *Jo-Ann Stores, Inc.* v. *Property Operating Co., LLC*, 91 Conn. App. 179, 198–99, 880 A.2d 945 (2005).

"Waiver is an intentional relinquishment or abandonment of a known right or privilege. . . . [W]aiver, as a special defense, must be specifically pleaded." (Citation omitted; internal quotation marks omitted.) Id. "[W]here, however, facts are sufficiently set up in a pleading to warrant the inference of waiver, it will be considered though it is not expressly alleged . . . ." (Internal quotation marks omitted.) *Stratford* v. *A. Secondino & Son, Inc.*, supra, 133 Conn. App. 745.

In *Stratford* v. *A. Secondino & Son, Inc.*, supra, 133 Conn. App. 737, the case cited by the trial court in its challenged ruling, the plaintiff argued that the trial court erred in rendering judgment for the defendant on its counterclaim seeking damages for nonpayment of sums allegedly due to it under a contract after excusing the defendant's noncompliance, on the ground of waiver by the plaintiff, with a condition precedent to payment under the contract. The plaintiff argued, more particularly, that the court's finding that it had "waived the condition precedent to payment provision was improper because the defendant did not specially plead waiver, and that, in any event, the court's finding was not supported by the evidence adduced at trial, and, thus, was clearly erroneous." Id., 744. There, as here, waiver had not been specially pleaded by the party asserting it at trial. The court in *Stratford* determined, however, that the issue of waiver was properly considered by the trial court as a basis for its decision on the merits because it was not only inferrable from allegations in the defendant's operative pleadings, but it was fully litigated at trial without objection by the plaintiff. "In this instance," the court in *Stratford* explained, "the defendant's second amended answer and counterclaim contained factual allegations consistent with a claim of waiver—namely, that the defendant continued to work on the project despite completing its contractual obligations and not receiving payment. Furthermore, the

defendant indicated to the court at the start of trial that the parties negated, through 'the course of conduct,' the language in the contract requiring . . . certificate of payment [from the architect who was acting on behalf of the defendant]. . . . The plaintiff failed to object at that time, and later, made no objection when the defendant presented evidence that the plaintiff had sought to forgo [the defendant's architect's] services in the role set forth for him under the contract. Nor did the plaintiff object to the defendant's treatment of waiver throughout trial or in its posttrial brief." (Footnote omitted.) Id., 745–46.

The present case is readily distinguishable from *Stratford* in two important ways. First, here, unlike in *Stratford*, the pleadings do not "warrant the inference of waiver." Not only was waiver not pleaded as a special defense, but no inference of waiver arose or could have arisen from the factual allegations in any of the operative pleadings because, very simply, Heritage Homes made no factual allegations in any of its pleadings. Instead, it simply denied the plaintiff's allegations of breach of contract. It is axiomatic that a special defense is not provable under a simple denial, because, by definition, a special defense is a claim that defeats the plaintiff's cause of action without disproving it. Therefore, because the special defense of waiver was not provable under Heritage Homes' denial of the plaintiff's claim of breach of contract, the pleading gave the plaintiff no notice that it might attempt to assert that special defense at trial.

Notwithstanding this pleading deficiency, Heritage Homes argues that the plaintiff waived her right not to litigate its unpleaded claim of waiver by failing to object to such a claim either when defense counsel first mentioned waiver in his opening statement or when evidence of waiver was offered during the trial. This takes us to the second distinction between the circumstances at issue in *Stratford* and those involved in this case. As previously noted, the plaintiff in *Stratford* had notice from the defendant's pleadings of the factual allegations upon which a claim of waiver could be based. It also heard the defendant, through counsel, explain that claim of waiver and give notice of its intent to rely upon it in a lengthy colloquy with the court at the start of trial. Notwithstanding such clear notice of the defendant's claim, the plaintiff made no objection to the court's consideration of it at any time, from the moment counsel first mentioned it in open court, through the defendant's presentation of evidence directly supporting that claim, to its ultimate submission of posttrial briefs and final argument addressing that issue. It was not until after the trial court issued its final decision relying upon the defendant's claim of waiver that the plaintiff in *Stratford* objected to the court's consideration of that claim. That is certainly not what happened in this case.

Here, it is true that the defense counsel used the term waiver in the course of his opening statement. On that score, however, the opening statement lacked any clear connection to the plaintiff's claim of breach of contract, for it referenced the parties' dealings before, not after, Bruno filed for divorce. The plaintiff's claim of breach of contract, by contrast, was based exclusively upon Heritage Homes' conduct toward the plaintiff, through the actions of Whipple after Bruno initiated divorce proceedings against her. Although prior to that time, the plaintiff and Bruno had handled all of their dealings with the defendants jointly, with both attending construction meetings, discussing proposed changes in plans and approving additional expenditures on the project together, the plaintiff claims that after Bruno's commencement of divorce proceedings against her, the defendants cut her completely out of the loop about the ongoing home construction project and refused to deal with her except through Bruno. It was in this later time frame, she claims, when the defendants were refusing to deal with her directly, that expenditures on the project skyrocketed without her knowledge or assent, thereby depleting the marital estate to her great financial loss.

Against this background, just as nothing in Heritage Homes' pleadings raised any inference of waiver by the plaintiff of the contractual rights she claimed to have been violated by its conduct toward her after Bruno filed for divorce, nothing in counsel's opening statement raised such an inference, either. At no point did counsel suggest that the plaintiff had assented in that postfiling period to have change orders approved orally, without her knowledge or approval. At no point, moreover, did counsel suggest that the plaintiff had assented in that period to not being advised of all ongoing expenditures on the project, as required by the contractual provision calling for billing for such expenditures on a biweekly basis. Here, then, unlike in *Stratford*, nothing in either Heritage Homes' pleadings or its first mention of waiver in counsel's opening statement gave the plaintiff any forewarning that a special defense of waiver might be asserted as to the conduct she claimed to have violated her contractual rights after Bruno filed for divorce.

For similar reasons, evidence presented by the defendants as to the plaintiff's and Bruno's dealings with Whipple before Bruno filed for divorce did not put her on notice that her breach of contract claim, which was based exclusively upon the defendants' postfiling conduct toward her, might later be met, on the basis of her prefiling behavior, with an unpleaded special defense of waiver. Heritage Homes, to reiterate, had flatly denied the plaintiff's claim of breach of contract based upon its refusal to deal with her directly after Bruno filed for divorce. She thus had no reason to consider any of its evidence concerning their earlier dealings as the basis

for mounting a waiver defense, or thus to object to the admission of any such evidence. Unlike the plaintiff in *Stratford*, which had clearly been apprised of the factual basis for and the defendant's plan to rely on its unpleaded claim of waiver, before evidence supporting that claim was presented at trial, the plaintiff here had no basis for objecting to testimony as to her predivorce dealings with Heritage Homes, which at most appeared to be historical background for her later-arising breach of contract claim.

Finally, at the close of all the evidence, when Heritage Homes first submitted its requests to charge and formally sought the court's permission to assert the special defense of waiver, the plaintiff behaved very differently than her counterpart did in *Stratford* by objecting immediately and with great energy to Heritage Homes' belated claim. Whereas the plaintiff in *Stratford* not only briefed the ultimate issue of waiver in its final posttrial brief but argued it on the merits in its final argument, all without objection of any kind, the plaintiff in this case objected strenuously and repeatedly to Heritage Homes' thirteenth-hour special defense, claiming that waiver should have been specially pleaded and that its interposition after the close of all the evidence at trial violated her right not to be deprived of her property without due process of law. Therefore, unlike in *Stratford*, it cannot be found here that Heritage Homes' unpleaded defense of waiver was fully litigated without objection by the plaintiff.

In light of the plaintiff's strong opposition to the belated amendment of Heritage Homes' special defenses to add the special defense of waiver, its only remaining argument is that it gave such clear notice to the plaintiff of its intent to rely upon that defense in its opening statement and its subsequent offers of relevant evidence at trial that the plaintiff's failure to object seasonably to such a defense itself constituted a waiver of its right to do so. That, of course, is not the standard announced in *Stratford*, where the exception to the rule requiring the special pleading of extrinsic matters that defeat an opponent's claim without contradicting it is reserved for situations in which the unpleaded claim is fully litigated without objection at trial. Manifestly, that is not what occurred in this case. Even, moreover, if it were possible to base a finding of waiver of the right to object to an unpleaded special defense based upon the complaining party's tardiness in raising an objection to that special defense after it was substantially raised by evidence presented at trial, that is not what happened here, either. For the reasons previously stated, it did not become obvious that Heritage Homes was seeking to rely upon that special defense until the very moment when it requested that the jury be charged thereon.

On the basis of the foregoing, we conclude that the

trial court abused its discretion by permitting Heritage Homes to raise the special defense of waiver for the first time after the close of evidence at trial, as it had not been specially pleaded, the pleadings did not allege any facts supporting an inference of waiver, and the claim that the plaintiff knowingly relinquished her contractual rights was not fully litigated at trial without objection by the plaintiff.[8] Accordingly, we further conclude that the court should have set aside the jury's verdict as to waiver.[9]

We must now address the scope of the remand of this case to the trial court. Specifically, we must determine whether the case should be remanded for a hearing in damages on the plaintiff's breach of contract claim or whether the jury's verdict on her breach of contract claim also must be set aside and remanded for a retrial on that issue. In finding in favor of the plaintiff on her breach of contract claim, the jury essentially has determined liability in her favor against Heritage Homes and the remaining determination is damages resulting from that breach. The plaintiff requests that the case be remanded for a hearing in damages on the jury's verdict in her favor on her breach of contract claim. The defendants have expressed no position on the plaintiff's request for relief and simply asked that the judgment be affirmed.

Our Supreme Court has held that, "As a rule the issues [at trial] are interwoven, and may not be separated without injustice to one of the parties," and "[a]n order restricting the issues [of a new trial] is the exception, not the rule." (Internal quotation marks omitted.) *Fazio* v. *Brown*, 209 Conn. 450, 455–56, 551 A.2d 1227 (1988). Nevertheless, a retrial may be limited to a specific issue or issues, "[w]here the error as to one issue or issues is separable from the general issues . . . [and] such . . . limitation does not work injustice to the other issues or the case as a whole." (Internal quotation marks omitted.) Id., 455.

Here, because the improper verdict on the special defense of waiver is wholly separable from the verdict in favor of the plaintiff on her breach of contract claim, we conclude that limiting the remand to a hearing in damages on the breach of contract verdict does not work injustice in this case.[10]

B

The plaintiff also claims that the court should have set aside the jury's verdict in favor of Whipple on her CUTPA claim. We disagree.

"[General Statutes §] 42-110b (a) provides that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . . [I]n determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the [F]ederal

[T]rade [C]ommission for determining when a practice is unfair: (1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. . . . In order to enforce this prohibition, CUTPA provides a private cause of action to [a]ny person who suffers any ascertainable loss of money . . . as a result of the use or employment of a [prohibited] method, act or practice . . . ." (Internal quotation marks omitted.) *Landmark Investment Group, LLC* v. *CALCO Construction & Development Co.*, 318 Conn. 847, 880–81, A.3d (2015). "[W]hether a practice is unfair and thus violates CUTPA is an issue of fact, to which we must afford our traditional deference." (Internal quotation marks omitted.) Id., 881.

The plaintiff argued to the jury that Whipple violated CUTPA by "intentionally concealing and withholding information from [her] in collusion with Stephen Bruno." As to her CUTPA claim against Whipple, the court instructed the jury as follows: "The plaintiff has . . . alleged in her complaint that . . . Whipple engaged in unfair and deceptive acts and practices in trade and commerce in violation of . . . General Statutes . . . [§] 42-110a . . . . That's called CUTPA. Specifically, she alleges that . . . Whipple conspired with Heritage Homes Construction Company, LLC, to not perform all of the construction work they claimed to have performed and conspired with Stephen Bruno, the plaintiff's former husband, to launder . . . Mr. Bruno's cash under the guise of work paid for and thereby depriving the plaintiff of fair, just and reasonable alimony and division of assets in connection with the plaintiff's divorce proceedings . . . . [I]n the scope of the CUTPA charge against . . . Whipple there is the additional allegation against him that he failed to provide the bills every two weeks as per a contract, that he failed to inform the plaintiff of change orders and work that was done, which was not contracted for by the plaintiff, and that he failed to inform the plaintiff of additional cost of work which was done but was not authorized by the plaintiff."

Although we cannot speculate as to which element of her CUTPA claim the jury found that the plaintiff had failed to prove—that Whipple's conduct violated CUTPA or that she sustained an ascertainable loss—she argues on appeal that she proved both elements. If the jury reasonably could have found that the plaintiff failed to prove either of those two essential elements of CUTPA, her claim on appeal must fail.

The plaintiff contends that she proved both a violation of CUTPA and ascertainable damages arising from that violation by virtue of the jury's verdict that Heritage Homes had violated her contractual rights. A simple breach of contract, however, does not necessarily constitute a violation of CUTPA. *Lydall, Inc.* v. *Ruschmeyer*, 282 Conn. 209, 247–48, 919 A.2d 421 (2007). The plaintiff claims that "the record evidence clearly discloses that the plaintiff plead[ed] and proved a collusive arrangement between Whipple and Bruno which was premised on fraudulent concealment and nondisclosure of project financial information against the plaintiff in order to prevent the plaintiff from making a full investigation and taking action to prevent any further unilateral spending/dissipation of marital funds." She argues that "[d]uring the civil trial, Whipple came clean and testified under oath to both the existence of his collusive agreement with Bruno as well as his fraudulent conduct to conceal material project information from [her] pursuant to Bruno's instructions and plan because 'he was the guy paying us.' " The plaintiff further argues that, "Whipple confessed to aggravating and unscrupulous conduct that was unlawful, unethical, wilful, reckless, deceptive and unfair by its very nature and definition." The plaintiff further argues that she proved that she suffered an ascertainable loss as a result of Whipple's allegedly unfair trade practice.[11]

Although Whipple admitted at trial that he filtered the project information through Bruno, the jury, as the finder of fact, was free to accept or reject the plaintiff's argument that he did so in collusion with Bruno with the intent to deprive the plaintiff of her fair share of the marital assets. The jury also was within its province to determine whether Whipple's decision to deal only with Bruno was unscrupulous, wilful, reckless and deceptive. Through her arguments on appeal, the plaintiff asks this court to sit as a seventh juror and to pass our judgment on the nature of the relationship between Whipple and Bruno. It is well settled, however, that that function is not ours to perform. See *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 381, 119 A.3d 462 (2015). We thus cannot conclude that the court abused its discretion in denying the plaintiff's motion to set aside the verdict as to her CUTPA claim.[12]

## II

The plaintiff also claims that the court erred in granting summary judgment in favor of Heritage Homes on her claims of breach of the implied covenant of good faith and fair dealing and violation of CUTPA.[13] The plaintiff correctly argues that the trial court's granting of summary judgment for Heritage Homes on her claim of breach of the implied covenant of good faith and fair dealing against Whipple was premised on the lack of a contractual relationship between her and Whipple, and

that such an argument cannot, in itself, form a proper basis for the trial court's granting of summary judgment on her parallel claim against Heritage Homes because she did have a contractual relationship with Heritage Homes, upon which such a claim properly could have been premised. The trial court, however, also based its summary judgment on breach of the implied covenant of good faith and fair dealing, and violation of CUTPA, against Heritage Homes on its determination that the plaintiff's allegations "that the defendants have engaged in a scheme to launder money for Stephen Bruno through the construction contract," were "conclusory and supported by no facts." On that score, the plaintiff argues that because the defendants never established a prima facie case for summary judgment, the burden never shifted to her to present concrete evidence to demonstrate the existence of a genuine issue of material fact.[14] We disagree.

"The standard by which we review a trial court's decision to grant a motion for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact [however] a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact *together with the evidence disclosing the existence of such an issue.* . . . It is not enough . . . for the opposing party merely to assert the existence of such a disputed issue. . . . Mere assertions of fact, whether contained in a complaint or in a brief, are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . .

"As a general rule, then, [w]hen a motion for summary judgment is filed and supported by affidavits and other documents, an adverse party, by affidavit or as otherwise provided by . . . [the rules of practice], must set forth specific facts showing that there is a genuine issue for trial, and if he does not so respond, summary judgment shall be entered against him. . . . Requiring the nonmovant to produce such evidence does not shift the burden of proof. Rather, it ensures that the nonmovant has not raised a specious issue for the sole purpose of forcing the case to trial." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Squeo* v. *Norwalk Hospital Assn.*, 316 Conn. 558, 593–94, 113 A.3d 932 (2015).

More specifically, "[t]he party opposing a motion for

summary judgment must present evidence that demonstrates the existence of some disputed factual issue . . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents. . . . The opposing party to a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence. . . . Our review of the trial court's decision to grant a motion for summary judgment is plenary." (Internal quotation marks omitted.) *Brusby* v. *Metropolitan District*, 160 Conn. App. 638, 646,    A.3d    (2015).

In its memorandum of law in support of summary judgment, the defendants argued, "As stated in the affidavit of Mr. Reed Whipple, the manager of Heritage Homes, there was no conspiracy with Mr. Bruno and no cash was 'laundered' as alleged. The plaintiff has no evidence to support such a damnable claim, which is categorically denied by the defendants. In sum, Heritage Homes entered into a contract to build a mansion at 111 Spring Valley Road, Ridgefield, Connecticut. The contract had no fixed price; rather, it was based on work, labor and materials experienced plus a set percentage of fifteen percent (15%) for management of the project. Heritage Homes completed construction of the home and obtained a Certificate of Occupancy for the home on or about July 28, 2006. Heritage Homes submitted invoices from all the subcontractors who performed work on the project, which totaled approximately $4,850,000. Heritage Homes charged the agreed upon fifteen percent (15%) management fee of $750,000 for a total of approximately $5,600,000. Mr. Bruno paid for the completed work and was satisfied with the performance of Heritage Homes. At no time did Reed Whipple or Heritage Homes return any payments to Mr. Bruno."

In support of summary judgment, the defendants submitted, inter alia, an affidavit in which Whipple averred, inter alia, as follows: "Mr. Bruno paid Heritage Homes all money owed pursuant to the [c]onstruction [c]ontract. Neither I nor Heritage Homes ever returned any money to Mr. Bruno, or 'laundered' money as alleged by the plaintiff . . . in her complaint."

Upon the submission of Whipple's sworn affidavit that neither he nor Heritage Homes had colluded with Bruno to launder his cash through the construction project, with its express averment that no money paid for the construction of the home was ever returned to

Bruno, the plaintiff needed to submit concrete evidence to demonstrate a genuine issue of material fact as to those claims in order to defeat Heritage Homes' motion for summary judgment. She failed to do so. She provided no evidence whatsoever that Heritage Homes ever returned any of the money paid by Bruno to him, much less that it did so in a scheme to launder that money through the project to keep it from her. Simply put, the fact that Heritage Homes may have breached the construction contract by choosing to deal only with Bruno because he was the party who was paying for the work performed does not, in itself, show that Heritage Homes acted in bad faith or that it colluded with Bruno to launder his cash through the construction project. We thus agree with the trial court's determination that the plaintiff's claim for breach of the implied covenant of good faith and fair dealing and violation of CUTPA consisted only of conclusory allegations and thus that Heritage Homes was entitled to judgment on those claims as a matter of law.

The judgment is reversed only as to the jury's verdict on the special defense of waiver and the case is remanded for a hearing in damages on the jury's verdict in favor of the plaintiff on her breach of contract claim. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The odd numbered counts allege claims against Whipple. Each even numbered count parrots the allegations of the odd numbered count that immediately precedes it, but asserts a claim against Heritage Homes.

[2] In its opening remarks to the jury, counsel for Heritage Homes mentioned "waiver" one time. During its opening remarks, the defendants explained to the jury, inter alia: "Never did Mr. or Mrs. Bruno say, hey, where's our bill? Hey, where's our bill every two weeks? And when you're involved in a contract, as the judge will instruct you on the law later, is an element of waiver.

"You can't say after the fact, oh, you've breached the contract when month after month after month this was the conduct which was acquiesced in and which was approved by the people who you were dealing with. Bills went out. Bills were paid.

"No one even talked about the one year. Oh, we're going to finish this contract in one year. On October 28 of 2005 when—which was a month—more than a month before the divorce, no one—Ms. Bruno didn't say, hey, how come you're not done because she knew that they didn't even have the plans finished.

"You're going to see plans dated well after the date of divorce, and you're going to hear testimony from Mr. [Jeffrey] Celestino, the project manager of Heritage Homes, and you're going to hear testimony from Mr. [Jay] Mose, [the architect], that we were designing as they were building, and Mr. Bruno approved everything.

"You're also going to hear testimony that Ms. Bruno and Mr. Bruno, before the divorce was filed, approved everything, and in many respects the house that was built was approved and was in motion prior to the divorce being filed.

"The evidence will then show that Ms. Bruno never said to Mr. Whipple, Mr. Celestino, who was on the property almost every day, stop what you're doing. I don't approve it. She never did."

[3] The defendants filed that amended pleading on March 15, 2013.

[4] During argument on the issue of waiver, however, Heritage Homes failed to direct the court to any specific evidence that the plaintiff knowingly relinquished her rights under the contract. It argued to the trial court: "My opening statement when I—when I referenced the fact that she waived those provisions of the contract. I stated in my opening statement and then during the cross of the plaintiff and during the direct of other witnesses I

specifically asked them, did you bill every two weeks; no. Did the plaintiff ever complain; no. Did the plaintiff ever come and ask for a billing for every two weeks; no. So, it was—it was mentioned in the opening statement. There was no objection to it at that point, and there was—all the evidence went in without objection . . . ." The defendant continued: "I don't think I can even ask the question did she waive her right. That's a legal conclusion. I—I asked the questions to the plaintiff. I stated waiver in my opening argument. I asked the question of the plaintiff. I asked the question of almost every witness on the defense side without objection, and without objection after I stated in my opening argument, I might add, Your Honor."

[5] We find this "offer" puzzling since it is a bedrock principle of law that a defendant bears the burden of proving its own special defense.

[6] The defendants amended their answer on March 15, 2013, one week following the jury's verdict, to add the following special defense as to the breach of contract claim:

"If the plaintiff has proven a breach of contract, any alleged breach was waived by the plaintiff by the following acts or omissions of the plaintiff:

"A. The plaintiff did not demand biweekly billing after an established pattern of non-biweekly billing.

"B. The plaintiff did not object and/or acquiesced in verbal change orders concerning the scope of work under the contract.

"C. The plaintiff made oral directions to change the scope of work under the contract."

[7] The court instructed the jury as follows: "Now, as regards to breach of contract as to Heritage Homes Construction Company, LLC, in this case the plaintiff, Lisa Bruno, has alleged that the defendant, Heritage Homes Construction Company, LLC, breached its October 28, 2004 contract with her to construct a custom built home on her premises located at 111 Spring Valley Road in the town of Ridgefield for a total price of $2,565,550.

"Specifically, the plaintiff alleges (1) that the defendant Heritage Homes failed to provide her with bills on a biweekly basis, and (2) that said defendant failed to provide her with written change orders regarding modifications and additions to the contract and the agreed price for her signature.

"The defendant Heritage Homes has admitted that the contract required them to provide biweekly reports to the plaintiff but denied that it failed to provide such records or bills and denied that change orders were not provided to the defendant."

***

"The defendant in this case, in addition to denying the claims that were made by the plaintiff, has affirmatively asserted [a] certain special defense to the plaintiff's claims. The special defense, which the defendant alleges, is that the plaintiff waived her right to complain that the defendant breached the contract because she did not complain when she did not receive bills every two weeks or to complain about not being given change orders for her signature.

"The plaintiff does not have the burden to disprove the allegations in that special defense. Rather, each party has the burden of proving each party's own claim and no burden to disprove the claims of that party's adversary."

***

"As far as the breach of the contract, if you conclude that there was a breach of contract and that such breach was material, you must also consider whether the plaintiff waived any such breach. Waiver is the intentional relinquishment or abandonment of a known right. Contract right[s] such as claims for breach of contract may be waived. Such a waiver may be established through the words or conduct of the other party. That's a question of fact for you to decide, whether or not that there was a waiver, in fact."

[8] In light of this conclusion, we need not address the plaintiff's additional claim that the trial court's ruling violated her constitutional rights.

[9] The plaintiff also claims that a certain provision of the construction contract at issue in this case barred the defense of waiver. Because this claim was raised by the plaintiff for the first time in her reply brief to this court, we decline to address it. See *2 National Place, LLC* v. *Reiner*, 152 Conn. App. 544, 548 n.4, 99 A.3d 1171, cert. denied, 314 Conn. 939, 102 A.3d 1112 (2014).

[10] Because the jury's determination that Heritage Homes had breached the contract was returned as a general verdict, there is a presumption that the jury found in favor of the plaintiff on both of her claims of breach. *Lukas* v. *McCoy*, 157 Conn. App. 384, 388, 116 A.3d 827 (2015). We recognize that Heritage Homes could not yet have appealed from the jury's determination that it had breached the contract because it was not aggrieved. If the

jury awards damages to the plaintiff on the basis of the breach of Heritage Homes, it will then be aggrieved and can properly appeal from the jury's determination of liability at that time.

[11] In support of her argument that she proved an ascertainable loss, the plaintiff cites to her trial testimony, as follows: "The house sold for 3.7 million in 2011. There was a 4 million dollar loss of equity. The contract had a price of 2.6 million dollars. The final amount paid to Heritage Homes was 5.6 million dollars. There's not a single change order that I ever signed authorizing an expenditure above the 2.65 million dollars. The house sold at a substantial loss. The amount of money spent at the time of the divorce was only 1.4 million. Given the chance, I would have completed the house for another million dollars had I been [given] the opportunity to do so. I never would have agreed or allowed for 4.2 million to be spent on a house I wasn't going to live in and that was going to be ordered to be sold."

[12] Because we conclude that the jury reasonably could have rejected the plaintiff's claim that Whipple engaged in conduct that violated CUTPA, we need not additionally address her claim that she suffered an ascertainable loss.

[13] Although the plaintiff earlier appealed the trial court's summary judgment in favor of Heritage Homes, that appeal was dismissed for lack of a final judgment due to the surviving breach of contract count that was then remaining against Heritage Homes. There no longer being a final judgment problem, the plaintiff's claim in this regard is properly before us.

[14] We note that the plaintiff's earlier appeal from, and our reversal of, the trial court's granting of summary judgment as to her CUTPA claim against Whipple was based upon the sufficiency of the *pleadings* to state a CUTPA claim, not an examination of the sufficiency of the plaintiff's *evidence* to raise a genuine issue of material fact in support of such a claim in the face of the Whipple's averments to the contrary. See *Bruno* v. *Whipple*, supra, 138 Conn. App. 514.